**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| COY COOK, | ) |
| | ) |
|         Plaintiff, | ) |
| | )   Case No.: 2:18-cv-01583-GMN-BNW |
| vs. | ) |
| | ) |
| LAS VEGAS RESORT HOLDINGS, LLC d/b/a, SLS LAS VEGAS, a foreign limited liability company, | )   **ORDER** |
| | ) |
|         Defendant. | ) |
| | ) |

Pending before the Court is Defendant Las Vegas Resort Holdings, LLC's ("Defendant's") Motion for Summary Judgment, (ECF No. 65). Plaintiff Coy Cook ("Plaintiff") filed a Response, (ECF No. 71), and Defendant filed a Reply, (ECF No. 74).

For the reasons discussed below, Defendant's Motion for Summary Judgment is **GRANTED**.

**I.     BACKGROUND**

This case arises out of Plaintiff's allegations of workplace discrimination and retaliation while Defendant employed him as a bartender at the Lobby Bar. (Second Am. Compl. ¶¶ 1, 12–39, ECF No. 35). Defendant employed Plaintiff from August 2014, until January 29, 2018. (McDonald Decl. ¶ 3, ECF No. 65-1). As a bartender, Plaintiff was covered by the collective bargaining agreement ("CBA") entered into between Defendant and the Local Joint Executive Board of Las Vegas, for and on behalf of the Culinary Workers Union, Local No. 226, and the Bartenders Union, Local No. 165 ("the Union"). (CBA, Ex. 1 to Resp. to Mot. Summ. J.

("MSJ"), ECF No. 71-1); (Taggart Decl. ¶ 6, ECF No. 65-4).  Since 2015, Plaintiff received several disciplinary warnings for performance issues and policy violations, such as unprofessional interactions with coworkers, failing to pull tips with cocktail servers, using his phone during work, and tardiness. (*See* MSJ 7:16–17:12, ECF No. 65).  Plaintiff had also complained to Erika Taggart in the Human Resources Department on October 20, 2017, and January 12, 2018, about alleged harassment and targeting that he was experiencing at the hands of other bartenders. (*See* Taggart Notes at Appdx. 473, 477, Ex. 21 to Resp. to MSJ, ECF No. 71-8); (Coy Email at Appdx. 630, Ex. 36 to Resp. to MSJ, ECF No. 71-10).

On January 10, 2018, Plaintiff was working at the bar when his manager, Monique Machuca, ordered him to take his scheduled lunch break. (Machuca Decl. ¶¶ 46–47, ECF No. 65-2).  Under the CBA, Defendant is required to provide bartenders with a one-hour lunch break, and so Defendant scheduled a "breaker" bartender to cover Plaintiff's bar during his break. (CBA Art. 14.01, Ex. 1 to Resp. to MSJ); (Machuca Decl. ¶ 44).  However, Plaintiff refused to take his lunch break and continued working at the bar. (Machuca Decl. ¶¶ 46–47).

As a result of Plaintiff's refusal to take his scheduled lunch break, Defendant placed Plaintiff on Suspension Pending Investigation on January 12, 2018. (McDonald Decl. ¶ 55).  On January 29, 2018, Defendant terminated Plaintiff for violating Article 14.01 of the CBA, insubordinate behavior, and a failure to follow the policy procedures contained in the employee handbook. (Employee Action Notice ("EAN"), Ex. R to Taggart Decl.).  The Union filed a grievance contesting Plaintiff's termination, but ultimately decided not to proceed to arbitration because Defendant had substantial evidence of Plaintiff's insubordination. (Grievance, Ex. S to Taggart Decl.); (Thomas Depo. 24:3–31:6, Ex. B to Hilden Decl., ECF No. 65-5).

Plaintiff filed the instant action on August 22, 2018. (*See generally* Compl., ECF No. 1).  However, Plaintiff has since filed two amended complaints, and the Second Amended

Complaint sets forth four causes of action against Defendant: (1) discrimination based on race, color, national origin, gender, or age in violation of Title VII and NRS § 613.330; (2) retaliation in violation of 42 U.S.C. § 2000e-3 and NRS § 613.340; (3) race discrimination in violation of 42 U.S.C. § 1981; and (4) breach of the collective bargaining agreement in violation of section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Second Am. Compl. ¶¶ 60–112). In the present Motion, Defendant argues that summary judgment should be entered in its favor as to all of Plaintiff's claims. (*See generally* MSJ, ECF No. 65).

II.     **LEGAL STANDARD**

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is a sufficient evidentiary basis on which a reasonable fact-finder could rely to find for the nonmoving party. *See id.* "The amount of evidence necessary to raise a genuine issue of material fact is enough 'to require a jury or judge to resolve the parties' differing versions of the truth at trial.'" *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983) (quoting *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1968)). "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary

judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). However, the nonmoving party "may not rely on denials in the pleadings but must produce specific evidence, through affidavits or admissible

discovery material, to show that the dispute exists," *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991), and "must do more than simply show that there is some metaphysical doubt as to the material facts." *Orr v. Bank of America*, 285 F.3d 764, 783 (9th Cir. 2002) (internal citations omitted). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." *Anderson*, 477 U.S. at 252. In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id*. at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

Plaintiff asserts three[1] main causes of action against Defendant: (1) employment discrimination; (2) retaliation; and (3) breach of the CBA. The Court will address each in turn.

### A. Title VII, NRS 613, and § 1981 Discrimination

The Court analyzes employment discrimination claims arising under Title VII, NRS 613, and § 1981 within the *McDonnell-Douglas* burden-shifting framework. *See Surrell v. Cal.*

---

[1] Plaintiff 's Complaint asserts two separate discrimination claims, one under Title VII and NRS 613 and one under 42 U.S.C. § 1981, but the Court will address all the discrimination claims together.

*Water Serv. Co.*, 518 F.3d 1097, 1105 (9th Cir. 2008).² As such, to establish an employment discrimination claim, a claimant must first establish prima facie case of discrimination. "Establishing a prima facie Title VII case in response to a motion for summary judgment requires only minimal proof and does not even need to rise to the level of a preponderance of the evidence." *Palmer v. Pioneer Assocs., Ltd.*, 338 F.3d 981, 984 (9th Cir. 2003).

To establish a prima facie case of employment discrimination under Title VII, NRS 613, or § 1981, a plaintiff must present evidence showing: (1) he is a member of a protected class; (2) he was qualified for the position or was performing his job in a satisfactory manner; (3) he suffered an adverse employment action; and (4) that similarly situated individuals outside his protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination. *See, e.g.*, *Zeinali v. Raytheon Co.*, 636 F.3d 544, 552 (9th Cir. 2011); *Surrell*, 518 F.3d at 1105-06. Once Plaintiff has established a prima facie case, the burden of production shifts to the employer to articulate some legitimate, non-discriminatory reason for the adverse employment action. *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1155 (9th Cir. 2010). If the employer meets this burden, the plaintiff must raise a triable issue of material fact that the reason offered by the employer was a pretext for discrimination. *Id.*

Here, Plaintiff claims that his termination based on insubordination for refusing his Manager's direction to take his scheduled break, was "merely a pretext for racial discrimination." (Second Am. Compl. ¶ 64). However, before the Court may engage in a

---

² Nevada anti-discrimination statutes, such as NRS 613, are analyzed under the same framework as federal discrimination claims. *See Pope v. Motel 6*, 114 P.3d 277, 280 (Nev. 2005) ("In light of the similarity between Title VII of the 1964 Civil Rights Act and Nevada's anti-discrimination statutes, we have previously looked to the federal courts for guidance in discrimination cases).

1 pretext analysis, Plaintiff must first demonstrate a prima facie case for race discrimination. The
2 Complaint claims discrimination based on Plaintiff's race (African American).[3] Accordingly, it
3 is clear that Plaintiff is a member of a protected class. Further, his termination on January 29,
4 2018, was an adverse employment action. Therefore, to survive summary judgment, Plaintiff
5 must demonstrate that a genuine issue of material fact exists as to whether: (1) similarly
6 situated non-African American employees were treated more favorably than him; and (2)
7 Plaintiff was satisfactorily performing his job. *See, e.g.*, *Zeinali*, 636 F.3d at 552.

   As to whether similarly situated non-African American employees were treated more
favorably, Plaintiff provides no evidence. Instead, Plaintiff presents a litany of evidence to
show that he personally was treated unfairly by Defendant. For example, Plaintiff explains that
he was reprimanded for violating overtime and tip pulling policies, even though Defendant has
not provided any documentation confirming the official existence of those policies. (Resp.
13:27–14:24, 44:1–2). Plaintiff also demonstrates that he has been penalized for tardiness,
even when only a few minutes late. (*See id.* 18:9–20). Finally, Plaintiff claims that he was
disciplined for using his phone during work, even though he was calling his managers to inform
them that he would be late. (*See* Cook Decl. ¶ 20, ECF No. 71-12).

   However, in addition to cataloging his alleged mistreatment, to assert a prima facie case
of discrimination, Plaintiff must also demonstrate that a similarly situated non-African
American employee was treated more favorably. *See, e.g.*, *Zeinali*, 636 F.3d at 552. In this

---

[3] The Complaint states that Plaintiff is a member of a protected class because he is an African American Male, which suggests that Plaintiff is also trying to claim discrimination on the basis of sex. However, Plaintiff provides no argument or evidence to support this claim; his entire discrimination complaint and his Response to the Motion for Summary Judgment focuses on the race element of his claim. Therefore, to the extent that Plaintiff attempts to claim sex discrimination, Defendant's Motion for Summary Judgment is granted.

case, that means Plaintiff must provide evidence that a non-African American bartender was not terminated for insubordination after refusing a manager's order to take a scheduled break. Plaintiff generally claims that "no other employee in SLS was ever [fired for refusing to take a lunch break] during their employment." (Resp. 44:9–11).  However, Plaintiff has not identified a single employee who refused to go on a lunch break, but was not terminated, or even an employee who acted insubordinately for another reason and was still not terminated.  While Plaintiff submitted some evidence that could support his contention that he was treated unfairly by Defendant, he has not demonstrated that that unfair treatment could be racially motivated. In other words, because Plaintiff provided no evidence to show that similarly situated non-African American employees were treated more favorably, Plaintiff has not met his burden to establish a genuine issue of material fact as to that element of a prima facie case, and thus, Plaintiff's discrimination claim cannot survive summary judgment.[4]

**B. Retaliation**

Retaliation claims are also analyzed using the *McDonnell-Douglas* burden-shifting framework, as discussed above. *See Villiarimo v. Alpha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002).  To establish a *prima facie* case of retaliation, a plaintiff must demonstrate: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the protected activity and the adverse employment action. *See Surrell,* 518 F.3d at 1108; *Manatt v. Bank of America, NA*, 339 F.3d 792, 801 (9th Cir. 2003).  Once established, the burden shifts to the defendant to set forth a legitimate, non-retaliatory reason for its actions. *Id.*

---

[4] Because Plaintiff's claim cannot proceed past summary judgment for a failure to show that similarly situated non-African American employees were treated more favorably, the Court need not address whether Plaintiff was satisfactorily performing his job or whether firing him for insubordination was a pretext for discrimination.

At that point, the plaintiff must produce evidence to show that the reasons stated by the defendant were a pretext for retaliation. *Id.*

Here, Defendant claims that Plaintiff has not established a prima facie case of retaliation because he has not provided evidence that he engaged in a protected activity. (MSJ 29:3–11). "Title VII provides, in relevant part, that 'it shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter.'" *Little v. Windermere Relocation, Inc.*, 301 F.3d 958, 969 (9th Cir. 2002) (citing 42 U.S.C. § 2000e-3(a)).  Unlawful employment practices include "[discharging] any individual, or otherwise [discriminating] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  Therefore, to successfully demonstrate participation in a protected activity in support of a Title VII retaliation claim, the employee must complain of an employer's allegedly discriminatory activity based on race, color, religion, sex or national origin. *See* 42 U.S.C. § 2000e-2(a)(1); *Little*, 301 F.3d at 969.

While Plaintiff's Complaint generally alleges that he complained to the Human Resources department about "discrimination and a hostile work environment," Plaintiff fails to specify the basis for this alleged discrimination. (Second Am. Compl. ¶¶ 40–42).  Further, the evidence provided by Plaintiff does not demonstrate that he complained to Defendant about any discrimination based on race, color, religion, sex, or national origin.  Plaintiff provides notes taken by Taggert, on October 25, 2017, which detail her conversations with manager Jason Hinsen and Plaintiff about Plaintiff's tardiness on October 20, 2017. (Taggart Notes at Appdx. 473, 477, Ex. 21 to Resp. to MSJ).  Hinson explains that Plaintiff complained to him about working with fellow bartender Amber Olsen, prior to his shift, which Plaintiff confirms. (*Id.*).

However, Taggart's notes never mention anything about Plaintiff's complaint being prompted by discriminatory behavior towards him.  Additionally, Plaintiff provides an email he sent to Taggart requesting a time to "discuss [his] harassment and targeting issues that have been going on in [his] department." (Coy Email at Appdx. 630, Ex. 36 to Resp. to MSJ).  Similar to Taggart's notes though, this email shows no indication that the harassment Plaintiff complained of concerns discrimination based on race, color, religion, sex, or national origin.  Since Plaintiff points to no other evidence to demonstrate that he complained of unlawful discrimination, the Court agrees with Defendant that Plaintiff failed to demonstrate that he engaged in a protected activity, and thus, failed to demonstrate a prima facie case of retaliation.[5]  Accordingly, the Court grants summary judgment in favor of Defendant on Plaintiff's retaliation claim.

**C. Breach of the CBA**

Section 301 of the LMRA, found at 29 U.S.C. § 185, vests district courts with jurisdiction over suits alleging a violation of a collective bargaining agreement. 29 U.S.C. § 185(a).  Section 301 encompasses suits seeking "to vindicate uniquely personal rights of employees such as wages, hours, overtime pay, and wrongful discharge." *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976).  A Section 301 claim is often referred to as a "hybrid" action because the plaintiff must prove both that his employer and his union breached their respective duties towards him. *Tessema v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union*, 233 F. Supp. 3d 856, 861 (D. Nev. 2017); *Conley v. Int'l Bhd. of Elec. Workers, Local 639*, 810 F.2d 913, 915 (9th Cir. 1987).  To prevail on a hybrid Section 301 claim, the plaintiff must show: (1)

---

[5] Even if Plaintiff was able to establish a prima facie case of retaliation, Defendants provided a legitimate, non-retaliatory reason for his termination (insubordination), and Plaintiff failed to present any evidence that his termination for insubordination was a pretext for retaliation.

that the employer violated the collective bargaining agreement; and (2) that the union violated its duty to represent the employee fairly in the grievance process. *DelCostello v. [Int'l Bhd. of] Teamsters*, 462 U.S. 151, 164-65, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71, 96 S. Ct. 1048, 47 L. Ed. 2d 231 (1976); *Vaca v. Sipes*, 386 U.S. 171, 190, 87 S. Ct. 903, 17 L. Ed. 2d 842 (1967).

In the present case, Plaintiff claims that his employer violated the CBA by terminating him because Defendant failed "to follow the [CBA's] just cause and progressive discipline requirements." (Second Am. Compl. ¶¶ 98–99).[6] The CBA provides the following with respect to terminating employees:

> No regular employee, after having completed the probationary period under Section 20.01, shall be disciplined and/or discharged except for *just cause*. The Employer shall follow a system of *progressive discipline*. The parties agree that progressive discipline normally requires, prior to suspension or discharge, that an employee be given a written opportunity to correct the deficiency, but that within the principle of progressive discipline, the Employer may impose immediate suspension or discharge for dishonesty, incompetence, misconduct insubordination, discourteous conduct toward a guest, failure to report to work without just cause, walking off the job during a shift, or drinking alcohol or use of controlled substance, or being under the influence thereof, during the employee's shift.

(*See* CBA Art. 6.01(a), Ex. 1 to Resp. to MSJ) (emphasis added).

Plaintiff has provided some evidence creating a genuine issue of material fact as to whether Defendant followed progressive discipline procedures prior to terminating him. The parties agree that the progressive discipline procedure follows four steps: (1) Record of

---

[6] Plaintiff also claims that Defendant breached the CBA "by adding a charge of insubordination that was not included in Plaintiffs original suspension order to circumvent the disciplinary procedures of the CBA." However, Plaintiff fails to identify which provision of the CBA requires the employer terminate an employee based on the same allegations as laid out in a suspension order.

Conversation ("ROC"); (2) Written Warning; (3) Final Written Warning; and (4) Suspension Pending Investigation/Termination. (*See* MSJ 12:1–4); (Resp. to MSJ 4:11–16); (McDonald Decl. ¶ 28, ECF No. 65-1). Leading up to his termination, Plaintiff had already been issued several warnings: an ROC[7] on January 27, 2017, for refusing to pull tips, (EAN), Ex. K to McDonald Decl.), a Written Warning[8] on June 29, 2017, for unauthorized overtime, (EAN, Ex. M to McDonald Decl.), a Final Written Warning on October 20, 2017, and a Suspension Pending Investigation on October 25, 2017, for tardiness, (EAN, Ex. L to Machuca Decl., ECF No. 65-2); (Ex. C to Taggart Decl., ECF No. 65-4), and a Suspension Pending Investigation on January 3, 2018, and a Final Written Warning on January 10, 2018, for using his using his cell phone during work, (EAN, Ex. V. to Machuca Decl.); (EAN, Ex. X to Machuca Decl.).

While these warnings seem to follow the appropriate progressive discipline structure, Plaintiff provides evidence that some of his alleged violations should not have been violations. For example, Plaintiff presents deposition testimony from Emily McDonald, Defendant's beverage operations manager, that at the time he was issued the ROC, pulling tips was not an official policy requirement. (McDonald Dep. at Appdx. 368, Ex. 9 to Resp. to MSJ, ECF No. 71-6) (explaining that "management cannot have any say in employees' tips"). Further, Plaintiff demonstrates that the CBA seemingly excepts attendance violations from the progressive discipline structure because attendance violations follow their own point-based disciplinary system. (*See* Memorandum of Understanding Re: Attendance at Appdx. 123, Ex. 1 to Resp. to MSJ, ECF No. 71-2) ("the attendance policy is based on a ten (10) point system . . .

---

[7] This violation was originally coded as a Written Warning, but was later downgraded to an ROC. (*See* Email, Ex. N to McDonald Decl., ECF No. 65-1).

[8] This violation was originally coded as an ROC, but was later upgraded to a Written Warning. (*See* McDonald Decl. ¶ 28, ECF No. 65-1).

a total of ten (10) points . . . results in termination."). As such, Plaintiff claims that his late arrivals should not have been considered as progressive discipline violations. Finally, Plaintiff testified that he was using his phone for the *work* purpose of informing management that he would be late, but the evidence presented by Plaintiff indicates that only *personal* cell phone use is a policy violation. (*See* Cook Decl. ¶ 20); (EAN, Ex. V to McDonald Decl.) ("The Company prohibits the *personal* use of cell phones . . . during work time or in work areas.") (emphasis added). This evidence creates a genuine dispute of material fact as to whether Defendant properly implemented progressive discipline by moving Plaintiff up the ladder for violations that may not be subject to progressive discipline, which would make his January 29, 2018, termination potentially premature under the CBA.

However, the CBA allows an employer to immediately terminate an employee for several reasons, such as insubordination. (*See* CBA Art. 6.01(a), Ex. 1 to Resp. to MSJ) ("the Employer may impose immediate suspension or discharge for . . . insubordination"). Defendant has provided multiple pieces of evidence that indisputably show that Plaintiff was terminated for insubordination. First, two of Defendant's beverage operations managers testified that Plaintiff was terminated for insubordination. (*See* McDonald Decl. 12:24–26, ECF No. 65-1); (Machuca Decl. 11:16, ECF No. 65-2). Second, Defendant's Human Resources department created Plaintiff's discharge summary, which lists "insubordination" as the only reason for his termination. (Discharge Summary, Ex. Q to Taggart Decl.). Finally, Plaintiff's termination notice states "[Plaintiff] is being terminated effective immediately for violation of Article 14.01 of the CBA, as well as . . . insubordination." (EAN, Ex. R to Taggart Decl.). Therefore, the evidence shows that Plaintiff's termination was based on insubordination, and thus, it was not subject to the CBA's progressive discipline requirement.

Plaintiff argues that Defendant only included the charge of insubordination on his termination notice to get around the CBA's progressive discipline requirement. (Second Am. Compl. ¶ 100).  Nonetheless, Plaintiff himself admits that he was insubordinate.  The dictionary definition of insubordination is "disobedient to authority." "insubordination." *Mirriam-Webster.com*, https://www.merriam-webster.com/dictionary/insubordination (last visited Sept. 29, 2021).  In his deposition testimony, Plaintiff explains that on the night of his termination, his Manager told him "you're going on break," and he responded, "no, I'm not going on break today." (Cook Dep. 82:15–19, Ex. D to Hilden Decl., ECF No. 74-1).  Plaintiff's refusal of a direct order from his manager is a clear demonstration of disobedience to authority, and thus, is a textbook example of insubordination.  As such, Plaintiff's argument that Defendant only identified insubordination as the reason for his termination to avoid progressive discipline requirements cannot hold water because he was indeed insubordinate.  Thus, Plaintiff has failed to provide evidence that Defendant breached the CBA by immediately terminating him, because immediate termination for insubordination is explicitly permitted under the CBA.  Since there is no other evidence that Defendant breached the CBA, Plaintiff cannot succeed on his Section 301 claim.

//
//
//
//
//
//
//
//

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment, (ECF No. 65), is **GRANTED**.

**IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Excess Pages is **GRANTED**.

The Clerk of Court shall close the case.

**DATED** this __30__ day of September, 2021.

_____
Gloria M. Navarro, District Judge
UNITED STATES DISTRICT COURT